UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAMES MALCOLM MCDONALD,

                Plaintiff,

  v.                                                                   Case No. 19-cv-391-pp

DIRECTOR DENISE GILYANI,
DOCTOR DORRANI, and
NURSE PRACTITIONER SWENSON,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT NO. 16), REOPENING CASE AND SCREENING AMENDED COMPLAINT**

---

      Plaintiff James Malcolm McDonald, who is representing himself, filed a complaint on March 14, 2019 alleging that the defendants violated his civil rights under 42 U.S.C. §1983 when they refused to obtain a CPAP machine for him. Dkt. No. 1. On June 7, 2019, the court screened the plaintiff's complaint and dismissed the case because the plaintiff failed to state a claim upon which the court could grant relief. Dkt. No. 14. On June 20, 2019, the plaintiff filed a document with the words "Motion for Reconsideration" handwritten at the top. Dkt. No. 16. The "motion" actually is a complaint—it is on a standard complaint form. The plaintiff didn't write the word "amended" at the top of the first page, but in his cover letter, the plaintiff says that he hopes the court will "accept the changes" he has made and that he has "clarified what occurred from May to September 2016" sufficiently to state a valid claim. Dkt. No. 16-1.

### A. Plaintiff's Motion for Reconsideration

The plaintiff does not cite a rule in support of his motion to reconsider, and none of the Federal Rules of Civil Procedure refer to motions to reconsider. There are two rules that parties use to ask courts to re-visit previous decisions. Fed. R. Civ. P. 59(e) allows a party to file a motion to alter or amend a judgment within twenty-eight days of the court entering judgment. Rule 60(b) allows a court to grant relief from a final judgment for a specific set of reasons, within a "reasonable time" after entry of judgment.

The plaintiff filed the amended complaint thirteen days after the court entered judgment, so it was timely under Rule 59(e). "Rule 59(e) allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." Obriecht v. Raemisch, 517 F.3d 489, 494 (7th Cir. 2008) (citing Sigsworth v. City of Aurora, 487 F.3d 506, 511-12 (7th Cir. 2007)). Whether to grant a motion to amend judgment "is entrusted to the sound judgment of the district court." In re Prince, 85 F.3d 314, 324 (7th Cir. 1996).

The plaintiff's motion does not present any newly-discovered evidence. This means that, under Rule 59(e), he is entitled to relief only if he can demonstrate that the court's rulings constituted a manifest error of law. A "manifest error of law" "is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.2d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill.

1997)).

The amended complaint does not demonstrate that the court made a manifest error of law or fact. It does not show that the court misunderstood the facts in the original complaint, or that it applied the law incorrectly to those facts. It simply provides more detail to the facts in the original complaint. The court will deny the plaintiff's motion to the extent that it is a motion to alter or amend the judgment under Rule 59(e).

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a party from a final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud . . . , misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Section 60(b)(1) allows a court to remedy its own mistakes. Mendez v. Republic Bank, 725 F.3d 651, 660 (7th Cir. 2013). The amended complaint does not convince the court that it made a mistake. The plaintiff did not provide the court with enough information in the original complaint to find that he stated a claim. In fact, the plaintiff's amended complaint implies that the plaintiff realizes it was *his* mistake, not the court's, that led to dismissal of the original complaint.

The plaintiff has not presented newly discovered evidence, so Rule

60(b)(2) does not afford him relief. He does not allege that the defendants obtained the judgment by fraud, misrepresentation or misconduct, so he is not entitled to relief under Rule 60(b)(3). The judgment is not void, nor has it been satisfied, so subsections (b)(4) and (b)(5) are not applicable.

Finally, the subsection (b)(6) "any other reason" "catch-all category is limited to 'extraordinary circumstances . . . .'" Id. at 657 (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863-64 (1988)). The plaintiff explains in his cover letter that he did not follow the "advice previously given in this and another case" because he was "under a tremendous amount of stress" and his wife was "struggling with breast cancer" at the time. Dkt. No. 16-1 at 1. He states that he is submitting the amended complaint specifically to address the deficiencies in his previous complaint. Id.

At screening, the court found that the plaintiff failed to state a claim because he failed to allege that the defendants knew that he had been prescribed a CPAP machine, that they subsequently denied him the CPAP machine or that the CPAP machine was necessary to prevent serious medical risks to the plaintiff. Dkt. No. 14 at 10. The court dismissed the individually named defendants—Director Denise Gilyani, Dr. Dorrani and Nurse Practitioner Swenson—because the plaintiff failed to explain the roles they played in denying him the CPAP machine. Dkt. No. 14 at 6.

Regarding Gilyani, the court found that the plaintiff did not explain what she was the director of and what she knew about the plaintiff's medical condition. Id. at 8-9. While the plaintiff took issue with the jail's policy of not

4

providing CPAP machines, the plaintiff also failed to allege whether, as a supervisor, Gilyani knew that her staff was denying the plaintiff a CPAP under this policy and either condoned the deprivation or turned a blind eye to it. Id. at 9.

Regarding Dorrani and Swenson, the court found that the plaintiff had alleged only that they asked him to sign a release form for his medical records, but had not alleged whether Dorrani or Swenson ever received the records, whether they refused to get him a CPAP machine or whether they prevented him from getting one elsewhere. Id. at 8. The court found that the plaintiff had failed to allege whether Swenson and Dorrani knew that if he did not have a CPAP machine, he was at serious medical risk. Id. Additionally, the court dismissed Kenosha County Health Services because it wasn't a "legal entity separable from the county government which it serves" and so can't be sued under §1983. Id. at 7-8; Whiting v. Marathon Cty. Sherriff's Dept., 382 F.3d 700, 704 (7th Cir. 2004).

As discussed in more detail in the screening section below, the amended complaint provides much of the information that was missing from the original, dismissed complaint. The amended complaint sues only Gilyani, Swenson and Dorrani. It specifically alleges that they knew about his medical condition but decided not to provide the CPAP machine, and that the decision was not based on a medical opinion but was based purely on policy. As such, at this stage, he sufficiently pleads that the defendants were deliberately indifferent to his sleep apnea.

5

The court finds that the fact that the plaintiff is representing himself, that he has been struggling with personal issues related to his wife's illness, and that, as explained below, the amended complaint provides the information that was missing from the dismissed complaint, demonstrates "extraordinary circumstances" sufficient to justify the court reopening the case and allowing the plaintiff to file the amended complaint. The court will grant the motion to reconsider, vacate its order dismissing the case, reopen the case and order that the amended complaint, dkt. no. 16, is the operative complaint.

**B.     Screening the Amended Complaint**

Federal law requires that the court screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. §1915A(a). The court must dismiss a complaint, or part of it, if the prisoner has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1)

someone deprived him of a right secured by the Constitution or laws of the United States and 2) that the person who deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court will give the allegations of a plaintiff representing himself, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

      1.     Allegations in the Amended Complaint

The plaintiff alleges that while he was incarcerated at Kenosha County Jail and Kenosha County Detention center between May and September 2016, the defendants were deliberately indifferent to his medical needs. Specifically, the plaintiff states that the defendants failed to address his sleep apnea by refusing to provide him a CPAP machine. Dkt. No. 16 at 3.

The plaintiff alleges that when he was previously incarcerated at the Kenosha County Jail in 2015, he had a CPAP machine. Id. at 2. But in May 2016, when he was extradited from Texas to Kenosha County, he was unable to bring his CPAP machine with him. Id. at 2-3. Upon arrival at Kenosha, the plaintiff states he made "the intake person aware of [his] medical issues, which included [the plaintiff] informing them that [he] had sleep apthnea [sic] and that [he] did not have [his] CPAP machine." Id. at 3. He also immediately "contacted the medical department by a sick call slip, making them aware that [he] did not have my CPAP machine and that [he] was having headaches and

7

that the inmates were telling [him] that [he] stopped breathing in [his] sleep." Id. The plaintiff also states that his blood pressure was high, and asserts that it was because he didn't have the CPAP machine. Id.

The plaintiff alleges that he explained the situation to Director Denise Gilyani, Nurse Practitioner Swenson, several other correctional staff and "eventually," when he was transferred to the Kenosha County Detention Facility from the downtown jail, to Dorrani. Id. The plaintiff says that Dorrani and the nurses at the Kenosha County Detention Center gave him the same response he'd gotten at the Kenosha County Jail downtown: "we don't provide CPAP machines to inmates and to call the family to get one." Id.

The plaintiff recounts that he continued to get headaches and have blood pressure issues and excessive snoring, so Dorrani decided to send him back to the Kenosha County Jail for observation. Id. at 3-4. Dorrani also asked the plaintiff to sign a medical release form so that Dorrani could verify with the plaintiff's "doctors in Illinois that [he] did have sleep apthnea [sic] and had a prescription for a CPAP machine." Id. at 4. The plaintiff says, however, that even after he arrived at the Kenosha County Jail and even after his medical records "were received by the medical staff," Gilyani and Swenson still told him that the medical unit and the jail weren't responsible for providing him with a CPAP machine. Id. at 4. The plaintiff says that he tried to call family and friends to help him (given that the jail supervisors told him this was his only option). Id. He also says he tried to contact Medicare, but that the insurance wouldn't cover him because he was incarcerated. Id. He never got the CPAP

8

machine.

The plaintiff says that "[o]n a later date," he was taken to a local hospital because his blood pressure had increased, he was dizzy and he was in distress. Id. at 4-5. During that hospital stay, he learned that he had an aneurism; his blood pressure was treated and he was allowed a bi-pap machine. Id. at 5. But when he returned to the jail from the hospital, Gilyani, Swenson and the other medical staff told him that "no Cpap machine would be provided and that unless [the plaintiff] had one mailed or dropped off at the jail, [he] would not get one." Id. The plaintiff says his blood pressure problems and other symptoms returned almost overnight. Id.

About three weeks later, the plaintiff was released and went to Illinois, where he "immediately obtained a new Cpap machine." Id. He says, however, that Gilyani, Swenson and Dorrani "placed [him] at risk of injury as [he] begged them for a Cpap machine." Id.

The plaintiff says that when he'd previously been incarcerated at the Kenosha County Jail, he had a CPAP machine upon arrival and was housed in the medical unit for the almost four months he was there. Id. at 6. He believes that Gilyani and Swenson should have known this, based on his records. Id. He says that his doctor in Illinois provided proof of his diagnosis of sleep apnea on or about July 26, 2016; at that point, he says, Gilyani, Swenson and Dorrani would have had his prior records, a "complete sleep study and Cpap prescription." Id. Yet their position remained unchanged, and "the medical staff let [the plaintiff] suffer until [he] left the jail 60 days later putting [him] at risk

9

for injury." Id.

For relief, the plaintiff asks for $100,000 in damages and for the court to "instruct that the policy be changed for persons who do not have a Cpap machine upon arrival at Kenosha County Jail that they receive one." Id.

2. Analysis

The plaintiff alleges that the defendants were deliberately indifferent to a substantial risk that he might suffer harm, in violation of the Eighth Amendment. "The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (quoting Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir. 2009); Estelle, 429 U.S. at 103). "Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs." Id. (citing Estelle, 429 U.S. at 104). A plaintiff claiming that prison officials were deliberately indifferent to his serious medical needs "must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition." Id. (citing Johnson v. Synder, 444 F.3d 579, 584 (7th Cir. 2006); Roe v. Elyea, 631 F.2d 843, 857 (7th Cir. 2011)).

As the court discussed in the original screening order, dkt. no. 14 at 6, "[a] 'serious medical need' is a condition that a doctor has recognized as needing treatment, or a condition so obvious that even a lay person would recognize the need for medical treatment." Schmidt v. Bowens, Case No. 16-cv-

30-slc, 2018 WL 708391 at *2 (W.D. Wis. 2018) (quoting Johnson, 444 F.3d at 584-85).

> A medical need may be serious if (1) it is life-threatening, carries risks of permanent serious impairment if left untreated or results in needless pain and suffering, *Guttierez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997); or (2) it "significantly affects an individual's daily activities," *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); or (3) it otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer [v. Brennan]*, 511 U.S. [825] at 847 [(1994)].

Id.

At least one court has found that obstructive sleep apnea constitutes a "serious medical need," and this court will assume as much for the purposes of screening the amended complaint. See Meloy v. Schuetzle, 230 F.2d 1363 (Table), 2000 WL 1160446, at *1 (8th Cir. Aug. 17, 2000).

To determine whether a prison official acted with deliberate indifference, the court must consider the official's subjective state of mind. See Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016). To succeed in proving that an official acted with deliberate indifference, "a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." Id. For medical professionals, the plaintiff also "must show more than mere evidence of malpractice." Id. The plaintiff must show that the official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." Stallings v. Liping Zhang, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014)).

At the screening stage, the plaintiff has alleged sufficient facts to support

11

a claim that Dorrani, Gilyani and Swenson acted with deliberate indifference. The plaintiff specifically states that all three defendants knew of his sleep apnea and the serious health issues it was causing but denied him a CPAP machine. He notes that the medical department got his medical records "on or about July 26, 2016", which clearly show his diagnosis and a prescription for a CPAP machine. Dkt. No. 16 at 4, 6. He also states that he spoke with Dorrani about his medical issues, and that Dorrani refused to provide a CPAP machine, not because his medical opinion was that the plaintiff did not need one, but because "we don't provide Cpap machines to inmates." Id. at 3. The plaintiff alleges, however, that Dorrani was concerned enough about the issues the plaintiff was having as a result of not having the CPAP machine that Dorrani transferred the plaintiff to the Kenosha County Jail for observation. Id.

Regarding defendants Gilyani and Swenson, the plaintiff alleges that both had prior knowledge of his serious medical condition because they knew he had a CPAP machine during his previous incarceration in 2015. He also states that they had his medical records, which explained his diagnosis and the recommended treatment. Additionally, he alleges that after he attempted to exhaust all other possibilities of obtaining a CPAP machine, he once again requested one, only to be denied and told that unless someone else provided the machine, the plaintiff wouldn't get one. Id. at 4. He explains that he then was hospitalized because his high blood pressure—a symptom associated with his sleep apnea—caused him to be in medical distress. Id. at 5. Once he was stabilized and released from the hospital, he alleges that Gilyani and Swenson

knew about his hospital stay, knew that his symptoms "almost immediately returned," and yet still denied him the CPAP machine unless he could obtain one outside the jail. Id.

The plaintiff has alleged sufficient facts that the defendants knew about his objectively serious medical condition but ignored the substantial risk of harm by refusing to provide a CPAP machine. The court will allow the plaintiff to proceed on an Eighth Amendment deliberate indifference claim against Dorrani, Gilyani and Swenson.

**C. Conclusion**

The court **GRANTS** the plaintiff's motion for reconsideration. Dkt. No. 16-1.

The court **VACATES** its June 7, 2019 order of dismissal (Dkt. No. 14) and judgment (Dkt. No. 15).

The court **ORDERS** that this case is **REOPENED** and that the Clerk of Court docket the document at dkt. no. 16 as an amended complaint, which will be the operative complaint.

The court **ORDERS** the Clerk of Court to revoke the strike incurred under 28 U.S.C. §1915(g).

The court **ORDERS** defendants Dorrani, Gilyani and Swenson to file a responsive pleading to the amended complaint.

The court will issue a separate order **REFERRING** this case to Magistrate Judge William E. Duffin for pretrial proceedings.

The court **ORDERS** that the parties must not begin discovery until after

the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 11th day of March, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**